UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOAN ARCHER,                                           :
                                                       :     **DECISION & ORDER**
                                                       :     18-CV-1158 (WFK)(VMS)
                       Plaintiff,                      :
                                                       :
        v.                                             :
                                                       :
HARTFORD LIFE AND ACCIDENT                             :
INSURANCE COMPANY,                                     :
                                                       :
                       Defendant.                      :
-------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** Joan Archer ("Plaintiff") brings this action against Hartford Life and Accident Insurance Company ("Defendant" or "Hartford") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502 (29 U.S.C. § 1132) seeking judicial review of the termination of her long-term disability benefits. Before the Court are the parties' cross-motions for summary judgement. For the reasons set forth below, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

## BACKGROUND

I.  Facts[1]

From October 2007 to May 2010, Plaintiff worked as an Assistant Store Manager at TJX Marshall's Department store. Def. St. ¶ 4. Through her employment, Plaintiff participated in an employee welfare benefit plan (the "Plan") which included long term disability benefits ("LTD") funded by a Group LTD Insurance Policy (the "LTD Policy"), issued and administered by Hartford. *Id*. ¶¶ 8–10. The Plan also included life insurance benefits provided through a Group Life Insurance Policy (the "Life Policy"), also issued and administered by Hartford. *Id*. ¶ 12. As claims administrator for both the Plan's LTD Policy and Life Policy, Hartford had "full discretion and authority to determine eligibility for benefits and to construe and interpret all

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statements, declarations, deposition testimony, and other evidence submitted in support of the motion. Fed. R. Civ. P. 56(c). *See generally* Def. Local R. 56.1(a) St. of Undisputed Material Facts (Def. St.), ECF No. 34-2; Def. Resp. to Pl.'s Local R. 56.1(a) St. ("Pl. St."), ECF No. 43.

1

terms and provisions of [t]he Policy" for both plans. *Id*. ¶¶ 11, 14; Policy at 92, ECF No. 34-14.

Plaintiff stopped working for TJX on May 8, 2010 due to spinal stenosis (*i.e.* spinal narrowing), degenerative disc disease, and carpal tunnel syndrome. Def. St. ¶ 24. Hartford approved Plaintiff's claim for LTD benefits as of August 8, 2010 and informed Plaintiff she must be "Disabled from Any Occupation" to continue to be eligible for benefits under the LTD Policy. *Id*. ¶ 26. On June 20, 2012, Hartford informed Plaintiff that it determined that she was "Disabled from Any Occupation" as of August 8, 2012 and therefore continued to be eligible for benefits under the LTD Policy. *Id*. ¶ 28. The letter also informed Plaintiff she would be required to periodically furnish "continued proof of Disability" to Hartford. *Id*. ¶ 31. Hartford also approved Plaintiff's claim for Waiver of Premium ("WOP") benefits as of January 21, 2011. *Id*. ¶ 32. In the same letter, Hartford informed Plaintiff that her Supplemental Group Life insurance benefit in the amount of $81,000.00 "will remain in effect without premium payment, until date of termination, 10/26/2031, provided [she] remain[ed] Disabled as defined by the Policy." *Id*. ¶ 32.

In October 2016, at the request of Hartford, Plaintiff's treating physicians, Dr. Tan and Dr. Davids (who had recently replaced Dr. Maltese), completed questionnaires asking each to agree or disagree that Plaintiff was capable of full time sedentary or light exertion work. Pl. St. ¶¶ 8–11. Dr. Davids and Dr. Tan indicated Plaintiff was capable of full time sedentary or light exertion work on the questionnaire. *Id.*

By letter dated January 10, 2017, Hartford informed Plaintiff that "[a]ll the information contained in [Plaintiff's] file was reviewed as a whole" and that her claim for continuing LTD benefits was denied effective January 10, 2017 because she no longer satisfied the definition of disabled from "[a]ny Occupation" under the LTD Policy. Def. St. ¶ 64. Subsequently, in a letter

2

dated January 24, 2017, Dr. Davids stated "[d]ue to the severity of [Plaintiff's] pain, severe limitations in range of motion, severe spasms, and difficulty in performing such activities as prolonged standing and sitting, I do not recommend that she return to work." Def. Mem. of L. in Support of Mot. for Summary J. ("Def. Mem.") at 12, ECF No. 34-1.

By letter dated June 30, 2017, Plaintiff appealed Defendant's termination of her benefits. Pl. St. ¶ 13. Plaintiff submitted additional documentation for Hartford to review on appeal, including updated medical records and opinions from her treating physicians, and a sworn telephonic statement from Dr. Davids saying that she "feel[s] that the wording" of the completed functionality questionnaire her office submitted to Hartford on October 19, 2016 was "confusing" and that she did not agree with the restrictions and limitations stated in the questionnaire." Def. Mem. ¶ 12. Defendant also referred Plaintiff's medical records "to an independent third-party vendor to arrange for two Independent Physician Consultants ("IPCs") to provide an expert medical opinion with respect to Plaintiff's restrictions and limitations as of January 10, 2017: (1) Dr. Benjamin Kretzmann, board certified in Internal Medicine with Rheumatology fellowship; and (2) Dr. Marvin Pietruszka, board certified in Occupational Medicine." Pl. St. ¶ 16.

By letter dated September 5, 2017, Hartford informed Plaintiff that it affirmed its prior decision to terminate Plaintiff's benefits. *Id*. ¶ 15. Plaintiff commenced this action on February 22, 2018 by filing her Complaint. *See* Compl., ECF No. 1. Plaintiff seeks LTD benefits and WOP benefits pursuant to 29 U.S.C. §1132(a)(1)(B), as well as pre-judgment and post-judgment interest, attorneys' fees, and any further relief that the Court deems necessary and proper. *Id*. at 4–7. On June 4, 2018, Hartford filed its Answer to the Complaint, ECF No. 16, denying all of the material allegations of the Complaint and asserting twelve affirmative defenses, including a

defense that all of Plaintiff's claims are barred by the terms, conditions, limitations, exclusions, and other provisions of the Plan. *Id*. Both parties now seek summary judgment. On June 19, 2019, the parties' cross-motions for summary judgement were fully briefed. ECF Nos. 28, 34, 38.

## LEGAL STANDARD

### I. ERISA Standard of Review on Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record. Fed. R. Civ. P. 56(a)–(c). A genuine dispute exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001). Courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant" when evaluating summary judgment motions. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and to determine the truth of the matter, but rather to answer, "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 249-50.

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "'specific facts showing that there is a genuine issue for trial.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence" in support of the non-movant will not alone defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing

sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmov[ant]'s case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

The parties agree the termination of benefits should be reviewed under an arbitrary and capricious standard. *See* Pl.'s Brief in Resp. to Def.'s Mot. for Summary J. ("Pl. Resp.") at 5, ECF No. 36. Courts review ERISA challenges to benefit terminations *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case courts will not disturb the claims administrator's ultimate decision unless it was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82–83 (2d Cir. 2009); *Salute v. Aetna Life Ins. Co.,* 04–CV–2035, 2005 WL 1962254, at *4 (E.D.N.Y. Aug. 9, 2005) (Platt, J.).

The scope of judicial review under the arbitrary and capricious standard is narrow and "the court may overturn a denial of benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 340 (E.D.N.Y. 2013) (Matsumoto, J.) (internal quotation marks and citations omitted). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Id.* (internal quotation marks and citations omitted) (alterations in original).

5

"In the context of a summary judgment motion, the arbitrary and capricious standard requires that [the court] ask whether the aggregate evidence, viewed in the light most favorable to the nonmoving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 154 (E.D.N.Y. 2012) (Bianco, J.) (alteration in original) (internal quotation marks omitted). However, courts cannot "substitute their own judgment for that of the insurer" as if "considering the issue of eligibility anew," and "[t]he mere existence of conflicting evidence does not render the [plan administrator's] decision arbitrary or capricious." *Topalian*, 945 F. Supp. 2d at 340. Courts weigh the conflict of interest of the claims administrator when assessing whether the termination decision was arbitrary and capricious. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116–17 (2008).

Although the arbitrary and capricious standard is a deferential one, the court's "review must include a searching and careful determination as to whether the conclusion reached by the administrator in view of the facts before it was indeed rational and not arbitrary." *Rappa v. Conn. Gen. Life Ins. Co.,* 06–CV–2285, 2007 WL 4373949, at *9 (E.D.N.Y. Dec. 11, 2007) (Amon, J.) (internal quotation marks omitted). The "plan's administrator . . . must provide a full and fair review of the decision to deny the claim." *Neely v. Pension Trust Fund of the Pension Hospitalization & Benefit Plan of the Elec. Indus.,* 00–CV–2013, 2004 WL 2851792, at *8 (E.D.N.Y. Dec. 8, 2004) (Johnson, J.).

## **DISCUSSION**

In their motion for summary judgment, Defendant argues their decision to terminate benefits after a full and fair review was supported by substantial evidence contained in Plaintiff's

medical records and the assessment of two IPCs.  In opposition, Plaintiff argues Hartford's decision to terminate her disability benefits was arbitrary and capricious because (1) her treating physicians' opinions qualify her as disabled under the policy, as there was no evidence of improvement of Plaintiff's underlying medical condition; (2) Defendant relied on initial opinions of Dr. Tan and Dr. Davids, which they both later repudiated; (3) Defendant relied on the opinions of physicians who had never seen or treated Plaintiff; (4) Hartford denied Plaintiff access to the medical reports underlying the final denial; and (5) Defendant had a conflict of interest.  *See* Pl. Mem. of Law in Support of Mot. for Summary J. ("Pl. Mem.") at 8–9, ECF No. 38-1.  In light of the deferential standard required in this case, and the substantial evidence that supported Defendant's decision, the Court finds Plaintiff's arguments insufficient to establish Defendant's denial of her benefits was arbitrary and capricious.  Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**I.     Plaintiff Did Not Abandon Her WOP Claim.**

The Court first considers Defendant's claim that Plaintiff abandoned her second cause of action for WOP benefits because she failed to address it in her motion for summary judgment. Def.'s Mem. of L. in Opp. to Pl.'s Mot. for Summary J. ("Def. Opp.") at 3, ECF No. 42.  In response, Plaintiff explicitly states she has not abandoned this claim.  Pl.'s Reply Brief in Support of Mot. for Summary J. ("Pl. Reply") at 3, ECF No. 40.  Because the basis for Plaintiff's WOP claim is exactly the same as the basis for her LTD benefits claim, the Court agrees with Plaintiff that, "Hartford's arguments place form over substance to a point of absurdity."  *Id*. at 4.

Where a party represented by counsel has not explicitly abandoned a claim, courts have the power to infer, when appropriate given the circumstances, that abandonment was intended.

*See Jackson v. Fed. Exp.*, 766 F.3d 189, 196–98 (2d Cir. 2014) (noting district courts must explain sufficiently for appellate review why they have found abandonment). Here, a determination of abandonment is not appropriate. Plaintiff clearly stated she has not and does not intend to abandon her WOP claim. Pl. Reply at 3. As stated in her reply, "[t]he same arguments and same facts apply equally to the termination of life insurance coverage with waiver of premiums and the termination of long term disability benefits." *Id*. Accordingly, the Court concludes Plaintiff has not abandoned her WOP claim.

II. **Defendant's Decision to Terminate Plaintiff's Benefits Was Reasonable and Relied on Substantial Evidence.**

Defendant's decision to terminate Plaintiff's benefits was not arbitrary and capricious because it was reasonable and relied on substantial evidence. Hartford reviewed all of Plaintiff's medical documentation, including updated opinions from treating physicians. Additionally, they submitted the documentation to independent physician reviewers, who based their conclusions on the full medical record and concluded Plaintiff no longer qualified for benefits under the Plan.

  a. Independent Physician Consultants

For Plaintiff's appeal, Defendant enlisted two IPCs, Dr. Kretzmann (rheumatology) and Dr. Pietruszka (occupational medicine), to review Plaintiff's case. Plaintiff argues Defendant inappropriately relied on the opinions of the independent physician reviewers instead of her treating physicians' opinions. Pl. Mem. at 15–17. However, there is no requirement that insurers give special weight to treating physicians. *See Mugan v. Hartford Life Group Ins. Co.*, 765 F. Supp. 2d 359, 371 (S.D.N.Y. 2011) (Buchwald, J.); *see also Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003) (holding "plan administrators are not obliged to accord special deference to the opinions of treating physicians"). Thus, "when faced with a conflict

between the opinion of the treating physician and the opinions of reviewing doctors and independent consultants, it is not arbitrary and capricious for the plan to prefer the reviewing doctors." *Greenberg v. Unum Life Ins. Co. of Am.,* 03-CV-1396, 2006 WL 842395, at *10 (E.D.N.Y. Mar. 27, 2006) (Sifton, J.). Without more, Defendant's decision to credit the conclusions of the IPCs over Plaintiff's treating physicians is not arbitrary and capricious.

Furthermore, substantial evidence supported the findings of the IPCs. Both independent physicians conducted a full review of the record, including additional documents submitted by Plaintiff following the initial denial. Administrative Record Advisory Report ("A.R. Report") at 232–42, ECF No. 34-7. In his report, Dr. Kretzmann noted his review included, among other things, x-rays, MRIs, and progress notes from January 2011 until May 2017. *Id.* Although he did not physically examine Plaintiff, the documents he reviewed included MRIs of Plaintiff's cervical and lumbar spine from January 2017; CT, PET, and X-Ray scans of her chest from February 2017; and lab results and progress notes from March and April of 2017. *Id.*

When describing Plaintiff's medical condition, Dr. Kretzmann noted that Plaintiff, "started treatment for sarcoidosis, with no significant improvements." *Id.* But, Plaintiff "was diagnosed with adenocarcinoma of the lung," "underwent [a] lobectomy," and is now "free of disease." *Id.* Plaintiff "has multiple muscoskeletal complaints resulting from her lumbar and cervical spondylosis as well as rheumatoid arthritis, with no motor or sensory impairments currently." *Id.* The "imaging studies revealed findings consistent with [Plaintiff's] symptoms such as foranimal narrowing and stenpsis at cervical and lumbar levels. However, she has range of motion difficulties, and given her recent surgery which is causing impairments due to decreased respiratory function in addition to her symptoms resulting from lumbar and cervical spondylosis, she is functionally limited and restricted with the following activities:" standing up

9

to 10 minutes at a time for a total of 1 hour per day; walking up to 5 minutes at a time for a total of 30 minutes per day; lifting up to 10 pounds occasionally; sitting up to 1 hour at a time for a toral of 8 hours per day. *Id*. With these restrictions, Dr. Kretzmann opined Plaintiff could perform full time sedentary work. *Id*.

Dr. Pietruszka came to significantly similar conclusions based on his review of the same evidence. Like Dr. Kretzmann, he noted that the May 20, 2017 progress report from Dr. Daniel Davids (Plaintiff's physical therapist), which severely limited the amount of time Plaintiff could spend sitting, was inconsistent with the May 11, 2017 progress report from Dr. Tan (Plaintiff's rheumatologist), which stated Plaintiff could sit for 1 hour at a time for up to 7.5 hours per day. *Id*. (noting in his conclusion that Plaintiff has no "condition that will preclude the claimant from constant sitting with positional changes"). Dr. Pietruszka additionally stated that although Plaintiff reported pain and displayed fatigue, with the restrictions cited above, "an inability to perform activities for 40 hours per week with restrictions has not been demonstrated." *Id.* Both IPCs reviewed Plaintiff's recent January 2017 MRI showing "foranimal narrowing" and "stenosis" along with Plaintiff's complaints of the resulting chronic pain. *Id.* at 235, 239. However, after taking into account Plaintiff's complaints and the objective reports, both determined this would not prohibit sedentary work with the above restrictions. *Id.* at 236. The Court is satisfied that the IPCs fully reviewed the record and objective evidence and that their conclusion was reasonable. Furthermore, even though there is some conflicting evidence in the record from Plaintiff's treating physicians, there is still substantial objective evidence in the record to support the decision that Plaintiff is not totally disabled.

    b. <u>Plaintiff's Treating Physicians and Objective Evidence.</u>

The objective evidence in the record, primarily gathered from Plaintiff's treating

physicians, can support a reasonable conclusion that Plaintiff is not totally disabled. "[T]he question for this court is not whether [Defendant] made the 'correct' decision [but] whether [Defendant] had a reasonable basis for the decision that it made. *Hobson*, 574 F.3d 75 at 89 (quoting *Chalker v. Raytheon Co.*, 291 Fed. App'x 138, 145 (10th Cir. 2008) (summary order)); *see also Topalian*, 945 F. Supp. 2d at 345.

After the initial denial, Dr. Michael Ryder (primary care physician), Dr. Laura Davids (neurologist), and Dr. Daniel Davids (physical therapist) indicated that Plaintiff would have difficulty returning to a sedentary 40-hour work week. *See* 2017 Questionnaires at 1–6, ECF No. 34-13. But enough objective medical evidence exists in the record such that a fact finder could reasonably come to the opposite conclusion. In addition to the reports of the IPCs, Defendant cites recent progress notes from Plaintiff's treating physicians to support its position. Def Mem. at 5–9. A March 3, 2017 progress note submitted by Dr. Baram (Plaintiff's pulmonologist), states Plaintiff "shows good improvement in the lung lesions with reduction in size and near resolution of the lymph nodes." Baram Progress Note at 26–27, ECF No. 34-12. Even though Plaintiff continues to smoke, Dr. Baram notes that she is "[n]ow disease free." *Id.* A June 27, 2016 progress note submitted by Dr. Samuels, one of Plaintiff's treating physicians at North Shore Hematology, stated that Plaintiff's arthritis and lung disease have "significantly improved," Plaintiff is "in otherwise good health," Plaintiff reports no muscle pain, stiffness, joint pains, joint swelling, or back pains, she is "[i]n no acute distress," and is "[f]ully active, able to carry on all pre-disease performance without restriction." Samuels North Shore Report at 57–58, ECF No. 34-15. An April 6, 2017 progress note submitted by Dr. George, another one of Plaintiff's treating physicians at North Shore Hematology, states Plaintiff "complains of lower back pain," but also notes "improvement in her pulmonary symptoms as well as arthritic

11

symptoms. She states she is otherwise in good health." George North Shore Report at 91–93, ECF No. 34-13. A May 11, 2017 Medical Opinion Form completed by Dr. Tan, stated that "[i]n an 8 hour workday, 5 days a week, on a full time basis, [Plaintiff] can be expected to be physically capable of the following activities:" sit for 7.5 hours out of 8 hours a day, 1 hour at a time, and stand or walk for 0.5 hours out of 8 hours a day, 5 minutes at a time. Dr. Tan Report at 126, ECF No. 34-11. An April 25, 2017 progress note from Dr. Davids, stated Plaintiff "feels that physical therapy has been extremely helpful," "reports good effect from trigger point injections," for muscle pain which provided her with "several days of relief," and her pain level after the trigger point injection was "3/10." Laura Davids Report at 49–50, ECF No. 34-12. During her examination, Plaintiff exhibited "5/5" motor skills and "no tremor," in addition to "2+/4 in bilateral upper and lower extremities" indicating a normal response for her deep tendon reflexes. *Id*.

While these reports also contain evidence that Plaintiff experiences pain and discomfort associated with her diagnoses that would limit some of her abilities, when her reports of pain are considered in conjunction with the objective medical evidence, this Court cannot say as a matter of law that Defendant's decision was arbitrary and capricious. For example, Plaintiff takes issue with the fact that the IPCs put no restrictions on her ability for fine manipulation and using her hands, a requirement of sedentary work. Pl. Resp. at 6. However, despite an October 2016 EMG showing signs of polyneuropathy in her upper extremities, which is typically associated with numbness or tingling of the hands, Plaintiff consistently reports no symptoms of hand numbing. In June 2016, she reported "arthritis has significantly improved" and made no new complaints. June 2016 Follow-Up at 14, ECF No. 34-15. During a review of her systems in April 2017, Plaintiff reported "muscle pain" and "joint pains," but "no stiffness," no "joint

swelling," "no weakness of limbs," "no loss of sensation," and "no tingling sensations." July 2017 Progress Note at 35, ECF No. 34-14. During the physical exam she reported "fully active, able to carry on all pre-disease performance without restriction." *Id.* Essentially, the objective medical evidence is undisputed, but the physicians have come to different conclusions regarding what limitations that evidence actually imposes on Plaintiff. Accordingly, the Court finds Plaintiff has not shown Defendant's decision to rely on the IPCs interpretation of the medical evidence was unreasonable.

### III. Plaintiff's Remaining Challenges to Defendant's Termination of Disability Benefits Fail.

Plaintiff argues Defendant's decision was not supported by substantial evidence because: (1) her treating physicians' opinions qualify her as disabled under the policy, as there was no evidence of improvement of Plaintiff's underlying medical condition; (2) Defendant relied on opinions of Dr. Tan and Dr. Davids, which they both later repudiated; (3) Defendant relied on the opinions of reviewing physicians, who had never seen or treated Plaintiff; and (4) Hartford did not allow Plaintiff to review medical reports they relied on prior to the final denial. Plaintiff's claims are unavailing.

First, as addressed previously, treating physicians' opinions are not entitled to controlling weight and Defendant's decision was supported by substantial evidence. Second, although it is true that claims administrators must not rely on any repudiated opinions or corrected errors, that did not occur here. Defendant indicated that both IPCs reviewed Plaintiff's updated opinions and the final adverse appeal determination listed the updated opinions as part of the full review. Def. Reply at 5. Third, Insurers are not prohibited from relying on independent medical consultants, who have not treated the Plaintiff. *Hobson v Metro. Life Ins. Co.*, 574 F.3d 75, 91

(2d Cir. 2009) ("[W]here the ERISA plan administrator retains the discretion to interpret the terms of its plan, the administrator may elect not to conduct an [independent medical examination] . . . ."). And finally, Plaintiff is not entitled to review the IPC reports that supported Defendant's decision. *Topalian*, 945 F. Supp. 2d 294 at 355 ("Hartford provided plaintiff with ample information to prepare his administrative appeal and his federal lawsuit even without affording him the opportunity to rebut the two medical peer review reports" cited in the final adverse appeal determination); *Black v. Pitney Bowes Inc.*, 05-CIV-108, 2008 WL 3992306, *11, n. 7 (S.D.N.Y. Aug. 26, 2008) (Lynch, J.) (noting plaintiff was not denied a "full and fair review" when he was not given an opportunity to respond to the report of the IPC who reviewed plaintiff's medical information on appeal). Defendant allowed Plaintiff to submit any additional documents on appeal and reviewed them fully. Therefore, Plaintiff's arguments are unavailing.

## IV. No Facts Support a Finding of a Conflict of Interest That Would Render Defendant's Decision Arbitrary and Capricious.

Lastly, Plaintiff argues it is "premature at this junction" to say that Defendant was not influenced by a conflict of interest. Pl. Resp. at 14–15. The Court disagrees.

"[A] plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion . . . ." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116–17 (2008); *see also McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133. "The weight assigned to the alleged conflict will differ 'according to the evidence presented.'" *Rozek v. New York Blood Ctr.*, 925 F. Supp. 2d 315, 340 (E.D.N.Y. 2013) (quoting *Glenn*, 554 U.S. at 111). Courts will consider a variety of factors including whether the "administrator has taken active steps to reduce potential bias and to promote accuracy" and whether the

14

administrator has a history of bias or deceptive conduct. *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (quoting *Glenn,* 554 U.S. at 133).

Here, an inherent conflict of interest exists because Hartford both decides whether the claimant receives benefits and then pays the benefits. However, the Court is satisfied Hartford was not influenced by a conflict of interest. First, Hartford paid the Plaintiff long-term disability benefits for four years, initially finding that she was disabled under the Plan's definition. Moreover, both in making the initial determination and in making the appeal determination, Hartford conducted a thorough review of the Plaintiff's medical records and gathered the opinions of independent physicians who testified that they were independent contractors who were not responsible for the determination of whether claimants were entitled to disability benefits. Kretzmann & Pietruszka Attestation at 243–44, ECF No. 34-7. *See Rozek*, 925 F. Supp. 2d at 117 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."). Plaintiff has produced no evidence to show that a conflict of interest should be considered in deciding whether Hartford abused its discretion. Plaintiff only reasserts that Hartford's termination decision was unfounded, and thus, the Court should infer that there was a conflict of interest. Pl. Resp. at 14. Without more, the Court does not find that there is any reason to suspect a conflict of interest which would render Hartford's decision arbitrary and capricious.

In sum, even viewed in the light most favorable to Plaintiff, the evidence in the record establishes that Hartford rationally found plaintiff was no longer totally disabled. As explained above, Hartford afforded Plaintiff a full and fair review and based its determination on substantial objective medical evidence. Thus, Hartford's conflict of interest deserves no weight and does not suffice to defeat Hartford's motion for summary judgment. *Durakovic*, 609 F.3d at

140; *Topalian*, 945 F. Supp. 2d at 362–64.

## CONCLUSION

Accordingly, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to close the motions pending at ECF Nos. 28, 34, and 38, and close the case.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 25, 2021
      Brooklyn, New York